# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

CASEY PATRICIA S.,

                              Plaintiff,

                                                          8:18-CV-1328
          v.                                                 (DJS)

ANDREW M. SAUL,[1] *Comm'r of Soc. Sec.*,

                              Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| CONBOY, MCKAY, BACHMAN<br>& KENDALL LLP<br>Counsel for Plaintiff<br>307 State Street<br>Carthage, NY 13619 | LAWRENCE D. HASSELER,<br>ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REGIONAL GENERAL COUNSEL<br>REGION II<br>Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | DAVID L. BROWN, ESQ.<br>LUCY WEILBRENNER, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

# DECISION and ORDER[2]

Currently before the Court, in this Social Security action filed by Casey Patricia S. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 8 & 10. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted. The Commissioner's decision denying Plaintiff disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1984, making her 30 years old at the alleged onset date ("AOD") and 33 at the date of the ALJ's decision. Dkt. No. 7 & 7-1, Admin. Tr. ("Tr."),[3] p. 257. Plaintiff reported completing high school, as well as obtaining a cosmetology certificate. Tr. at p. 65. Plaintiff has past work as a cleaner, as a patient account representative, and in patient registration. Tr. at p. 297. Plaintiff alleged disability due to depressive disorder, asthma, hypothyroidism, attention deficit hyperactivity disorder, chronic bronchitis and emphysema, pneumonia flare-up, irritable bowel syndrome, blood

---

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

[3] The Administrative Transcript is contained in both Dkt. Nos. 7 & 7-1 due to its size. The pagination is continuous between the two; the Court will refer to both as "Tr." followed by the Bates stamped page number.

clotting factor disorder, circulation issues, polycystic ovary syndrome, MRSA infection, encephalitis, and anxiety.  Tr. at p. 295.

## B.  Procedural History

Plaintiff applied for Disability Insurance Benefits on December 2, 2015.  Tr. at pp. 257-258.  Her application was denied.  Tr. at pp. 128-133.  Plaintiff requested a hearing, and a hearing was held on April 26, 2018 before Administrative Law Judge ("ALJ") Thomas Cheffins at which Plaintiff was represented by counsel.  Tr. at pp. 57-96.  A vocational expert, as well as Dr. Jerry Seligman testified at the hearing.  *Id.*  The ALJ issued a decision finding Plaintiff not disabled on June 6, 2018.  Tr. at pp. 25-56.  Plaintiff requested review of the ALJ's determination, and the Appeals Council denied the request for review on September 20, 2018.  Tr. at pp. 1-6.  Plaintiff filed her Complaint in this action on November 13, 2018.  Dkt. No. 1.

## C.  The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020.  Tr. at p. 30.  Second, the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date of June 16, 2015.  *Id.*  Third, the ALJ found that Plaintiff had the following severe impairments: clotting factor deficiency; asthma; morbid obesity; degenerative disc disease; immunodeficiency; obstructive sleep apnea; hypothyroidism; GERD; depression; and anxiety-related disorder, including panic disorder and post-traumatic stress disorder (PTSD).  Tr. at p. 31.  Fourth, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at p. 32. Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations:

> [T]he claimant can sit 6 hours out of an 8-hour workday and stand 2 hours out of an 8-hour workday.  She can lift 10 pounds frequently.  She can occasionally push and pull with the bilateral upper extremities.  She can never climb ladders, ropes, or scaffolds.  She can never crouch, kneel, or crawl.  She can occasionally stoop.  She can occasionally climb ramps and stairs.  She can frequently balance.  She can frequently reach at tabletop level, but occasionally reach above tabletop level in all directions.  She must avoid concentrated exposure to extreme temperatures, both hot and cold; wetness and humidity.  She must avoid moderate exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas.  She must avoid concentrated exposure to excessive vibration; use of hazardous machinery; and unprotected heights.  She should avoid working with the public.  She can make simple work related decisions and maintain concentration, persistence, and pace for 2 hours at a time for simple tasks.  She can understand, carry out, and remember simple work instructions and procedures.  She can adapt to changes in the work setting that are simple, predictable, and can be easily explained.

Tr. at p. 35.

Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. at p. 43.  The ALJ found that Plaintiff was born on July 24, 1984 and was 30 years old, which is defined as a younger individual age 18-44 on the alleged disability onset date, and that she has at least a high school education and is able to communicate in English. *Id.*  The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that she is not disabled, whether or not she has transferable job skills.  *Id.*  The ALJ next found that considering Plaintiff's age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. *Id.* Seventh, and last, the ALJ concluded that Plaintiff has not been under a disability from June 16, 2015, through the date of his decision. Tr. at p. 44.

### D. The Parties' Briefings on Their Cross-Motions

In her Motion for Judgment on the Pleadings, Plaintiff first contends that the ALJ failed to classify her polycystic ovarian syndrome and resulting ovarian hemorrhage, hospitalization, and continued risk factors as a severe impairment and failed to consider it in determining her RFC. Dkt. No. 8, Pl.'s Mem. of Law, pp. 11-13. Second, Plaintiff asserts that the ALJ's determination that Plaintiff did not meet Listing 12.06 was not supported by substantial evidence. *Id.* at pp. 14-16. Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's credibility and subjective complaints of disabling symptoms. *Id.* at pp. 16-21. Finally, Plaintiff argues that the RFC is not supported by substantial evidence. *Id.* at pp. 21-23.

In response, Defendant contends that substantial evidence supports the ALJ's assessment of Plaintiff's impairments, as well as the ALJ's conclusion that Plaintiff's impairments do not meet Listing 12.06. Dkt. No. 10, Def.'s Mem. of Law, pp. 6-10. Defendant contends that the ALJ properly assessed Plaintiff's subjective complaints, and that substantial evidence supports the RFC. *Id.* at pp. 11-16.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines

whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ Failed to Properly Consider Plaintiff's Polycystic Ovarian Syndrome and Related Concerns

Plaintiff first contends that the ALJ failed to classify her polycystic ovarian syndrome and resulting hemorrhage, hospitalization, and continued risk factors as a severe impairment, and to consider it in determining Plaintiff's RFC. Pl.'s Mem. of Law at pp. 11-13. Plaintiff argues that the ALJ erred in relying on Dr. Seligman's opinion instead of her treating physicians' opinions. *Id.* Plaintiff contends that Dr. Seligman never examined Plaintiff or offered a medical explanation for his opinion, while Dr. Lehmann is familiar with Plaintiff's medical history and examined her on multiple occasions. *Id.* at pp. 12-13. Plaintiff argues that the evidence demonstrates that the impairment will significantly impact Plaintiff for at least one year, and that by not finding it to be severe, the ALJ denied Plaintiff her right to have it considered throughout the disability review process. *Id.* at p. 13.

In response, Defendant maintains that the ALJ accurately noted that the polycystic ovarian condition was not expected to last for a continuous period of at least twelve

months, and that Plaintiff's ongoing medical risks are attributable to her underlying blood-clotting disorder, which the ALJ found to be severe. Def.'s Mem. of Law at pp. 6-7. Defendant contends that testimony of Dr. Seligman at the hearing, which was sufficiently supported, provides substantial evidence for the ALJ's finding. *Id.* at pp. 7-8. Defendant further asserts that it was not improper for the ALJ to rely on Dr. Seligman's opinion over that of Dr. Lehmann. *Id.* at pp. 8-9.

The ALJ found that the record did not demonstrate that Plaintiff's polycystic ovarian syndrome caused more than a minimal effect on Plaintiff's ability to perform basic work activities for a continuous period of twelve months. Tr. at p. 31. He further noted that Plaintiff was recently hospitalized for ovarian hemorrhage, but the medical expert testified that this condition was not expected to last one year and therefore was not severe. *Id.* Plaintiff's attorney cross-examined Dr. Seligman on this point, confirming that he was aware of Plaintiff's ovarian hemorrhage and that he had reviewed Dr. Lehmann's March 20, 2018 letter, but that he did not feel that the data supported the prediction that Plaintiff would be unable to perform work for a year as a result of that problem, based upon his review of the record. Tr. at pp. 75-76.

The ALJ was entitled to rely on the opinion of the medical expert. 20 C.F.R. § 404.1513a; *see also Frye ex rel. A.O. v. Astrue*, 485 Fed. Appx. 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such,

their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). In discounting the opinion of Dr. Lehmann, the ALJ explained that he was doing so because he provided a "rather blanket statement of disability, without specific functional assessment." Tr. at p. 42. The ALJ explained that Dr. Lehmann's relationship with Plaintiff was treating her during her hospitalization for her ovarian hemorrhage, and that his opinion was contradicted by Dr. Seligman's opinion, which was better supported. *Id.* Given the ALJ's established discretion to choose between supported medical opinions, nothing about that choice requires reversal here. *See McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions."); *Philpot v. Colvin*, 2014 WL 1312147, at *19 (N.D.N.Y. Mar. 31, 2014) ("The ALJ acted within h[is] discretion in weighing the various competing assessments").

The opinion of Dr. Lehmann appears to opine that the combination of Plaintiff's chronic condition and her recent life threatening illness, together, render Plaintiff disabled. Tr. at p. 2063. Dr. Lehmann explains that Plaintiff's chronic congenital illness caused her ruptured ovarian cyst to result in life-threatening bleeding. *Id.* The ALJ found clotting factor deficiency to be a severe impairment, which Dr. Lehmann opined was, at least in part, the cause of Plaintiff's ongoing medical risks. *Id.* As such, the ALJ's severity determination does not appear to be inconsistent with Dr. Lehmann's opinion.

In any event, Plaintiff's contention that the ALJ's determination that these disorders were not severe "denied Plaintiff her right to have it considered throughout the disability review process" is meritless, as the ALJ is required to consider non-severe

impairments in determining the RFC.  20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").  The ALJ acknowledged as much in his determination. Tr. at p. 31 ("[B]ecause non-severe impairments can, when considered in conjunction with one another and the claimant's severe impairments, affect the claimant's residual functional capacity, any such effect that all of the claimant's non-severe impairments would have on the claimant's ability to function have been considered when formulating the residual functional capacity.").  This contention therefore fails.  *See Kemp v. Comm'r of Soc. Sec.*, 2011 WL 3876526, at *8 (Aug. 11, 2011) ("Often when there are multiple impairments, and the ALJ finds that only some of the impairments, but not others, are severe, any error in the severity analysis is harmless because the ALJ continues with the sequential analysis, and does not deny plaintiff's application based [on] the second step alone.").

## B.   Whether the ALJ's Step Three Finding is Supported by Substantial Evidence

Plaintiff next contends that the ALJ's finding that she does not meet Listing 12.06 is unsubstantiated.  Pl.'s Mem. of Law at pp. 14-16.  Plaintiff argues that the ALJ did not consider any of Plaintiff's treating physicians' opinions in reaching this determination, and did not fully adhere to the medical opinion on which he relied, therefore offering his non-medical personal opinion as a basis for his decision, and ignored the opinion of Dr. Case, which contradicted the ALJ's determination.  *Id.* at pp. 15-16.  Plaintiff also asserts

that the ALJ cherry picked the evidence on which he relied, particularly with regard to Dr. Mount's opinion. *Id.* at p. 15.

Defendant argues that the ALJ relied on Plaintiff's own admissions and Dr. Seligman's opinion in determining the extent of Plaintiff's mental impairments. Def.'s Mem. of Law at p. 9. He further argues that Dr. Mount's opinion does not support Plaintiff's argument, and that the ALJ was warranted in affording Dr. Case's opinion little weight. *Id.* at pp. 9-10.

In determining whether Plaintiff meets the requirements for Listing 12.06, the ALJ determined that in understanding, remembering, or applying information, Plaintiff has a moderate limitation; in interacting with others, Plaintiff has a moderate limitation; in concentrating, persisting, or maintaining pace, Plaintiff has a moderate limitation; and in adapting or managing oneself, Plaintiff has a mild limitation. Tr. at pp. 33-34. The ALJ explained that his determinations as to these items were based on Dr. Mount's opinion, as well as on Plaintiff's testimony at the hearing and her adult function report sheet. Tr. at pp. 33-34. Dr. Mount, the psychiatric Consultative Examiner, opined that Plaintiff

> is able to follow and understand simple directions and instructions. She is able to perform simple tasks independently. She has mild to moderate limitation in maintaining attention and concentration. She has moderate limitation maintaining a regular schedule. She has mild to moderate limitation learning new tasks. She has moderate limitation performing complex tasks independently. She has mild to moderate limitation making appropriate decisions and relating adequately with others. She has moderate limitation appropriately dealing with stress.

Tr. at p. 1580. The ALJ's determination as to these items was thus no less restrictive than that opined by Dr. Mount; indeed, it was at times more restrictive. Plaintiff's arguments

that the ALJ's determination was unsupported, or that the ALJ cherry picked portions of the opinion, are therefore meritless. Further, to the extent Plaintiff argues that the ALJ should have adopted Dr. Mount's opined moderate restrictions in maintaining a regular schedule, the regulations require "extreme limitation of one, or marked limitation of two" of the areas of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Therefore, the adoption of moderate limitations in the area of functioning would not have raised Plaintiff's impairments to the level where she would meet the requirements of Listing 12.06. As for the ALJ's evaluation of Dr. Case's opinion, the ALJ explained that her "opinions of marked mental limitations in virtually all functional areas . . . are not supported by routine outpatient treatment notes, nor by the claimant's daily activities." Tr. at p. 42 (citing Ex. 9F, 16F, 34F, 41F, & 73F). The ALJ sufficiently explained his determination regarding Listing 12.06, which is supported by substantial evidence, and Plaintiff's arguments fail.

### C. The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ improperly evaluated Plaintiff's subjective complaints of disabling symptoms. Plaintiff argues that the ALJ did not provide sufficient reasons to not give her complaints full weight, and cherry picked the record to discredit findings that support her complaints. Pl.'s Mem. of Law at pp. 16-17. She also asserts that her lengthy work history supports her allegations, and that the ALJ failed to consider her extensive treatment history, and her absences caused by appointments, and side effects of her medications. *Id.* at pp. 18-20. Plaintiff argues that her ability to take care of herself and her son does not demonstrate that she is able to work. *Id.* at pp. 19-20.

In response, Defendant contends that the ALJ supported his determination with records from physical examinations, routine treatment recommendations, evidence that Plaintiff suffered few side effects from medication, and Plaintiff's daily activities. Def.'s Mem. of Law at p. 11. Defendant argues that there is no support in the record for Plaintiff's testimony regarding her infusion treatments and their resulting physical effects, that the ALJ noted that Plaintiff did not allege side effects from medications, and that he accounted for her fatigue. *Id.* at pp. 12-14. As for Plaintiff's contentions regarding the dangerousness of her conditions, Defendant notes that Dr. Lehmann indicated that Plaintiff's condition would be managed with anti-coagulants. *Id.* In addition, Defendant contends that the ALJ did not focus solely on Plaintiff's activities of daily living in discounting her subjective complaints, as he also recounted the objective evidence that undermined her allegations. *Id.* at pp. 14-16.

"'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints

of pain.'" *Schlichting v. Astrue*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). The ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility" and so the ALJ's assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

In order to assess a claimant's subjective complaints, the ALJ must consider the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3). Here, the ALJ discussed Plaintiff's treatment history in detail, including that "physical examinations longitudinally have yielded relatively limited abnormalities, and generally included normal respiratory examination; normal extremities; generally normal neurologic findings; and normal back examination" and "do not support the level of debility alleged by the claimant." Tr. at pp. 38-39. The ALJ described that Plaintiff's mental impairments were generally managed on a routine outpatient basis during the relevant period, with medication and limited counseling, with relatively stable mental status examinations, and limited symptoms during the relevant period, and that the

- 15 -

psychological consultative examination resulted in "generally stable findings." Tr. at pp. 38-40.

The ALJ also described in detail Plaintiff's daily activities, detailing that she retains the ability to perform self-care independently with some difficulty, obtain and take medication with medication-minder containers, perform certain household chores, maintain a valid driver's license and drive independently, ride in a car, shop in stores, count change, listen to books on tape, play with her child, watch television, use a computer and cell phone, complete her application-related materials thoroughly and with great attention to detail, live with others and care for her child with assistance from others at times, care for pets, coordinate with others when she needs assistance with heavier household chores, child care, travel, or other tasks, play with her child on the floor or at a table, cuddle with her child, use a cell phone to keep in touch with others, including talking and texting, host friends who visit her home, and attend medical appointments and some family gatherings with others. Tr. at p. 40. He discussed her treatments and medications, describing that she attends counseling, gets infusion therapy for immune deficiency and injection therapy for clotting factor deficiency, and takes various medications and uses inhalers. Tr. at p. 39. The ALJ noted that recommendations have been routine, including medication compliance, dietary compliance, weight loss/control, exercise, and improvement of coping mechanisms. *Id.*

"This litany of activities supports the ALJ's determination that Plaintiff's subjective complaints are not reasonably consistent with the medical evidence and is sufficient to sustain the ALJ's assessment" of Plaintiff's subjective complaints. *Hopkins*

*v. Colvin*, 2014 WL 4392209, at *6 (S.D.N.Y. Sept. 5, 2014). The ALJ "set forth his [ ] reasons with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *See Schlichting v. Astrue*, 11 F. Supp. 3d at 205 (quoting *Lewis v. Apfel*, 62 F. Supp. 2d at 651). As a result, the Court will not second guess the ALJ's conclusions regarding the evidence in the record as his conclusions are supported. *Selimaj v. Berryhill*, 2019 WL 1417050, at *9 (S.D.N.Y. Mar. 29, 2019); *Sherwin M. M. v. Berryhill*, 2018 WL 5447680, at *6 (N.D.N.Y. Aug. 22, 2018).

As for Plaintiff's contentions regarding her work history, the failure to discuss a claimant's prior work history is not itself a basis for reversal. *Coty v. Colvin*, 2016 WL 1211284, at *4 (W.D.N.Y. Mar. 29, 2016); *Medovich v. Colvin*, 2015 WL 1310310, at *12-13 (N.D.N.Y. Mar. 23, 2015). "Although it is true that 'a good work history may be deemed probative of credibility,' it remains 'just one of many factors' appropriately considered in assessing credibility." *Campbell v. Astrue*, 465 Fed. Appx. 4, 6 (2d Cir. 2012) (summary order) (quoting *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998)).

Plaintiff also argues that the ALJ cherry picked evidence to support his findings and undercut her subjective complaints. The ALJ cannot ignore evidence or "'cherry pick' only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence." *Walsh v. Colvin*, 2014 WL 4966142, at *9 (N.D.N.Y. Sept. 30, 2014) (citing *Royal v. Astrue*, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012)); *see also Alsheikhmohammed v. Colvin*, 2015 WL 4041736, at *6 (N.D.N.Y. July 1, 2015). That does not appear to be the case here where the ALJ performed a detailed review of

- 17 -

the evidence. Further, "'an ALJ is not required to discuss in depth every piece of evidence contained in the record, so long as the evidence of record permits the Court to glean the rationale of an ALJ's decision.'" *Coleman v. Comm'r of Soc. Sec.*, 2015 WL 9685548, at \*5 (N.D.N.Y. Dec. 11, 2015), *report and recommendation adopted*, 2016 WL 109994 (N.D.N.Y. Jan. 8, 2016) (quoting *LaRock ex rel. M.K. v. Astrue*, 2011 WL 1882292, at \*7 (N.D.N.Y. Apr. 29, 2011)). Plaintiff's contention that the ALJ gave specific pieces of evidence too little weight fails.

Plaintiff also contends that the ALJ's reliance on her ability to care for herself and her son was inappropriate, as such abilities do not directly translate to being able to consistently perform work activities, or contradict allegations of disability. Pl.'s Mem. of Law at pp. 19-20. It can be improper for an ALJ to rely on a claimant's care of a child too heavily in determining the individual can perform work activities. *See, e.g., Coyle v. Comm'r of Soc. Sec.*, 2018 WL 3559073, at \*7 (N.D.N.Y. July 24, 2018). In this case, the ALJ considered Plaintiff's ability to care for herself and her child in considering the totality of the evidence. He did not unduly rely on it, however; he placed the emphasis of his review on the medical opinions and notes in the record. As for Plaintiff's argument that the ALJ ignored Plaintiff's treatments and side effects, which would cause absences, the ALJ described Plaintiff's treatments at length, and found that Plaintiff reported "few, if any side effects." Tr. at p. 39. The ALJ considered these items sufficiently.

### D. The ALJ's RFC Determination

Finally, Plaintiff contends that the RFC determination is not supported by substantial evidence because the ALJ did not consider her polycystic ovarian syndrome

and related issues, and failed to consider it throughout the disability review process. Pl.'s Mem. of Law at pp. 22-23. She contends that the ALJ cherry picked evidence in the record to discredit evidence supporting her allegations, failed to address Plaintiff's absenteeism caused by her appointments, treatments, and symptoms, and failed to address side effects of Plaintiff's medications and treatments. *Id.* at p. 22. She asserts that there is not substantial evidence to support a finding that Plaintiff could maintain an acceptable work schedule, and that the ALJ improperly rejected Dr. Mount's opinion. *Id.* at p. 23.

In response, Defendant contends that the ALJ considered Plaintiff's polycystic ovarian syndrome and resulting hemorrhage, hospitalization and risk factors, and found Plaintiff's blood-clotting disorder to be a severe impairment. Def.'s Mem. of Law at pp. 15-16. Defendant contends that it was proper for the ALJ to reject Dr. Mount's opinion, due to Dr. Mount's normal examination findings and the other largely normal mental status examinations in the record. *Id.* at p. 16. Defendant further responds that Plaintiff's maintenance of daily activities, her ability to work in the past, and her normal physical examinations support the finding that she can maintain an acceptable work schedule. *Id.*

As discussed above, the ALJ found Plaintiff's clotting factor deficiency to be a severe impairment. His determination that Plaintiff's polycystic ovarian syndrome and hemorrhage are non-severe impairments does not constitute error. Plaintiff contends the ALJ improperly rejected Dr. Mount's opinion regarding Plaintiff's ability to maintain an acceptable work schedule. Dr. Mount opined that Plaintiff has a "moderate limitation maintaining a regular schedule." Tr. at p. 1580. The ALJ afforded her opinion "mostly substantial weight," finding it to be generally consistent with mental status examinations

- 19 -

at various times, but not adopting her limitation in following and maintaining a regular schedule, because Plaintiff's activities of daily living were inconsistent with such a limitation.  Tr. at pp. 40-41.  However, the limitation opined by Dr. Mount is not necessarily inconsistent with the RFC, and Plaintiff does not make an argument that it would be.  *See Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, at *4-5 (N.D.N.Y. Mar. 16, 2017) (finding medical opinion that plaintiff may have a moderate limitation in ability to maintain a schedule "would not be inconsistent with the ALJ's RFC determination that Plaintiff could perform simple, routine work"); *Uplinger v. Berryhill*, 2019 WL 4673437, at *7 (W.D.N.Y. Sept. 25, 2019) (finding that RFC limiting plaintiff to work in a low stress environment sufficiently accounted for plaintiff's moderate limitations in maintaining a schedule, and collecting cases finding same).  This argument fails.

As for Plaintiff's contention that the ALJ failed to consider the effects and frequency of Plaintiff's treatments and their side effects, the ALJ discussed both of these items in his determination, and there is substantial evidence for his findings.  Plaintiff also contends the ALJ cherry picked notes within the record to discredit findings of greater impairment than found by the ALJ; however, she does not point to instances of the ALJ doing this.  In any event, the ALJ undertook an extensive review of the evidence in the record; while he did not discuss every piece of evidence in the record, he was not required to, and the Court does not discern cherry picking in this case.  *See Coleman v. Comm'r of Soc. Sec.*, 2015 WL 9685548, at *5.  The RFC is supported by substantial evidence and is not a basis for remand.

- 20 -

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Dated:   November 19, 2019
         Albany, New York


Daniel J. Stewart
U.S. Magistrate Judge